**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NATHANIAL STONE,

        **Plaintiff,**

v.                                     **Case No.  8:12-cv-35-T-17TBM**

MICHAEL J. ASTRUE,
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/


**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff was twenty-two years old at the time of his administrative hearing.  He stands 6 feet 1 inch tall and weighed 160 pounds according to his administrative filings.  Plaintiff has an eleventh grade education.  Plaintiff reported some past work as a dishwasher and housekeeper.  Plaintiff applied for Supplemental Security Income ("SSI") payments in April 2009 (protective filing date), alleging disability as of April 1, 1998, by reason of attention deficit disorder ("ADD"), a slow learning disability, and only one kidney.  Plaintiff's application was denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ") on March 1, 2011. The Plaintiff appeared without representation at the hearing and testified in his own behalf. His mother also testified, and a vocational expert was called by the ALJ.

In essence, Plaintiff testified that his disability was difficulty with comprehension. His past work as a dishwasher and house cleaner each lasted only about a month or two. He lives at home with his parents and two brothers. He spends his days watching television, drawing pictures, and listening to music. He does some yard work like raking and he does laundry, but he does not cook or drive. He shops once a month for groceries. He used to attend church but had not attended recently. He visits with other people off and on. He does not have any physical problems. (R. 39-43).

Antoinette Stone, Plaintiff's mother, testified next. She reported that Plaintiff was born cocaine dependent. When asked by the ALJ what she thought Plaintiff's disability was, she stated that he has a very short attention span. One school called it ADD and another school called it a specific learning disability ("SLD"). She stated Plaintiff did well in elementary and middle school in smaller classes, but in high school everything just shut down. She stated that Plaintiff was socially promoted to the eleventh grade. The witness also told the ALJ that Plaintiff received child SSI benefits to age eighteen. She testified that Plaintiff worked about three months as a dishwasher before he was terminated. At home, Plaintiff will rake the yard, take out garbage, and vacuum. He will do most anything asked to do, and he rakes other people's yard for money. He has only one kidney but his kidney function is okay. (R. 43-47).

Lastly, the ALJ took testimony from Leslie Lloyd, a vocational expert ("VE").  On a hypothetical assuming a person of Plaintiff's age and limited education, with no past relevant work, no exertional limitations, and capable of unskilled work, the VE opined that jobs such as farm worker or helper, order filler, office cleaner or hotel cleaner, and dishwasher or kitchen helper would be available.  The expert also opined that none of the jobs required literacy.  However, if the individual could not concentrate or attend to basic work tasks, the VE opined no work would be available.  (R. 47-50).

Also before the ALJ were sparse records outlining the Plaintiff's medical and educational history.  These matters are addressed herein as necessary.

By her decision of March 30, 2011, the ALJ determined that while Plaintiff has medically determinable impairments related to a questionable learning disorder[1] and oppositional traits,[2] he suffers no severe impairments or combination of impairments that significantly limit his ability to perform basic work activities, and, accordingly, is not disabled.  (R. 23-29).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

_____

[1]A specific learning disability is defined by the Florida Department of Education "as a disorder in one or more of the basic learning processes involved in understanding or in using language, spoken or written, that may manifest in significant difficulties affecting the ability to listen, speak, read, write, spell, or do mathematics. . . ."  http://www.fldoe.org/ese/sld.asp (last visited Feb. 21, 2013).

[2]An oppositional defiant disorder is defined by the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition - Text Revision (DSM IV-TR), "as a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least 6 months and is not due to a mood or psychotic disorder."  http://emedicine.medscape.com/article/918095-overview (last visited Feb. 21, 2013).

B.

Entitlement to Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

The Plaintiff seeks remand and an immediate award of benefits, alleging that the ALJ erred by: (1) failing to find a severe impairment; (2) failing to properly develop the record; (3) applying an incorrect disability standard; (4) failing to properly evaluate the opinion of the consultative psychologist, Linda Appenfeld, Ph.D.; (5) failing to accept the VE's testimony indicating disability; and (6) giving improper weight to the opinions of state agency doctors. Given these alleged errors, Plaintiff urges that his case should be reversed and remanded for "an immediate award of benefits." (Doc. 12).

For ease of reference Plaintiff's claims are addressed out of order. Plaintiff's fourth and sixth claims, which challenge the ALJ's consideration of opinions provided by a consulting psychologist, a nonexamining psychologist, and a nonexamining psychiatrist, are addressed first. Plaintiff's first claim, which challenges the ALJ's step two finding that his impairments were non-severe, is addressed second. Thereafter, Plaintiff's second, third, and fifth claims are addressed.

5

By his fourth claim, Plaintiff argues that because the ALJ accepted the opinion of Dr. Appenfeldt, a consulting examiner, the ALJ should have accepted all of her opinions including her assessments of his Global Assessment of Functioning ("GAF")[3] and intelligence quotient ("IQ"), both of which indicate not only severe impairments but a finding of disability.  By his sixth claim, Plaintiff argues that the ALJ erred by according significant weight to the opinions of the state agency physicians in light of Dr. Appenfeldt's opinions regarding his GAF and IQ scores.  (Doc. 12 at 8-10, 11).

In response, the Commissioner maintains that the ALJ properly considered and evaluated all of the evidence.  The Commissioner notes that Dr. Appenfeldt specifically stated that the results of the standardized testing were not considered valid or reliable and she suspected Plaintiff was malingering.  He also notes there is no evidence that an acceptable source diagnosed Plaintiff with mental retardation or borderline functioning.  As for the GAF score, the Commissioner urges that Plaintiff's GAF on the date of the examination does not establish a severe impairment or disability.  Lastly, the Commissioner contends the ALJ properly considered the assessments by the state agency sources.  (Doc. 16 at 18-21, 22-23).

The objective evidence in this case consists of:

(1)     a Psychological and Learning Analysis Report completed in 1996 by
        Vicki Mayes, a school psychologist;(R. 187);[4]

---

[3]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. text rev. 2000) (DSM-IV-TR).

[4]The Woodcock-Johnson Psycho-Education Battery Revised Tests of Achievement and Cognitive Ability and the Stanford-Binet Intelligence Scale Fourth Edition were

(2)    an Individual Education Plan ("IEP") for the 2006/2007 school year indicating Plaintiff was receiving services in the exceptional student education ("ESE") program for SLD (R. 178-86, 225-34);[5]

(3)    Dr. Appenfeldt's evaluation in July 2009 (R. 192-94); and

(4)    two Psychiatric Review Technique forms completed in September and December 2009 respectively by nonexamining, state agency sources, which indicated Plaintiff's mental impairments were not severe (R. 196-208, 210-22).

At issue is the ALJ's evaluation of the opinions of Dr. Appenfeldt and the nonexamining, state agency sources.

Dr. Appenfeldt conducted a "Limited Evaluation with IQ Test" on July 29, 2009, upon request of the Division of Disability Determinations. The Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV) was administered. The results revealed a full scale IQ score of 41, which falls within the extremely low range of intelligence.[6] (R. 193). The psychologist noted, however, that the "results should be used with caution, as they are

_____

administered. Intelligence testing was in the average range and achievement testing revealed a deficit in auditory processing. Further consideration for eligibility in SLD was recommended. (R. 187-90).

[5]The IEP reflected: a diploma change option from a standard diploma to a special diploma (academic not vocational); difficulties in the general educational curriculum; reading and math levels in the sixth grade range; an inability to maintain passing grades in the general education setting due to inconsistent attendance; a lack of employability skills given attendance and discipline records; and difficulty with communication and expression in academic and group settings. (R. 178-86, 225-34).

[6]"General intellectual functioning" is defined by the intelligence quotient (IQ or IQ equivalent)." DSM-IV-TR at 41. "Significantly subaverage intellectual functioning" is an IQ of approximately 70 or below . . . ." *Id.* Listing 12.05 closely tracks the DSM-IV-TR definition of mental retardation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 ("Mental retardation refers to significantly subaverage general intellectual functioning . . .").

believed to significantly underestimate the claimant's true abilities and the undersigned questions the reliability and validity of the scores." (R. 194). In another area of her report, the psychologist stated, "the results of standardized testing are not considered to be valid and reliable." (R. 193). Her diagnostic impressions included consider malingering, oppositional traits, and a current GAF of 50.[7] (R. 194). In conclusion, Dr. Appenfeldt stated:

> The most accurate diagnosis for this claimant would be obtained from multiple settings and sources, including complete history. Therefore, additional review of all records is advised. I would suggest taking a very close look at this claimant and supplement his self-reports with additional objective information. The undersigned is not convinced of the severity of his impairments, as he has presented them. There is the consideration [Plaintiff] is exaggerating and magnifying problems in order to obtain financial compensation for himself with secondary gains operating.

(R. 194). After reviewing Dr. Appenfeldt's report, the nonexamining consultants concurred that the Plaintiff suffered from mental impairments, but both judged those impairments to be non-severe. In particular, Arthur Hamlin, Psy. D., reported in September 2009 that Plaintiff had medically determinable impairments of a learning disability by history and oppositional defiant disorder but the impairments were non-severe. In his opinion, the impairments resulted in no limitation in activities of daily living; mild limitations in social functioning; mild limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 196-208). Thereafter, Nancy Dinwoodie, M.D., reported in December 2009 that Plaintiff's learning disorder, not otherwise specified, with average intelligence, was

---

[7]A GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 32.

a medically determinable impairment but that it was non-severe because it did not result in any degree of limitation or episodes of decompensation.  (R. 210-22).

The ALJ recounted Dr. Appenfeldt's findings and accorded "great weight" to her opinion.  (R. 27-28).  The ALJ noted that while the psychologist assessed a GAF of 50 and an IQ of 41, she was not convinced of the severity of Plaintiff's impairments, noted that he may be exaggerating or magnifying his problems, and reported that the results of testing were not considered valid and reliable.  The ALJ also gave "great weight" to the opinions of the nonexamining consultants, finding them "consistent with the record as a whole, including the reports of Dr. Mayes and Dr. Appenfeldt, as well as the claimant's reported activities."  (R. 28).  On this record, the ALJ found that Plaintiff had medically determinable impairments of "questionable learning disability and oppositional traits," but that the impairments did not constitute severe impairments under the Act because they resulted in no limitation in activities of daily living, no more than mild limitation in social functioning and concentration, persistence, and pace, and no episodes of decompensation.[8]  (R. 25-29).

Upon thorough consideration of the arguments and record evidence, I find that the ALJ properly considered and evaluated the opinions at issue.  As for Dr. Appenfeldt's reported GAF score of 50, it offered a snap-shot of her assessment of Plaintiff at the time of the evaluation.  In of itself, the reported GAF score is not indicative of any specific functional limitations or disability.  *See Wind v. Barnhart*, 133 Fed. App'x 684, 692 n. 5 (11th Cir. 2005)

---

[8]The ALJ also found that Plaintiff did "not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work activities for 12 consecutive months; therefore, [Plaintiff] does not have a severe impairment or combination of impairments . . ."  (R. 25).

(unpublished) (recognizing that the Commissioner has declined to endorse the use of GAF scores in disability determinations and that such scores have no "direct correlation to the severity requirements of the mental disorders listings."); *Seymore v. Apfel*, 131 F.3d 152, 1997 WL 755386, at *2 (10th Cir. 1997) (unpublished) (providing that, "[c]ontrary to claimant's contention, a GAF rating of 45 . . . standing alone . . . does not evidence an impairment seriously interfering with claimant's ability to work"); *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (finding low GAF score does not translate into a specific finding in regard to functional limitations).  Thus, contrary to Plaintiff's contention, Dr. Appenfeldt's reported GAF score itself does not result in a finding of severe ADD or SLD or reveal the extent of functional limitations, if any, actually suffered by Plaintiff.

Regarding the IQ score of 41, Plaintiff's argument is completely without merit. First, Dr. Appenfeldt clearly stated that the results of the testing were not valid.  (R. 193-94). Plaintiff flatly ignores this.  Second, there is simply no record evidence which demonstrates that Plaintiff suffers from mental retardation or borderline intellectual functioning or was so diagnosed, and other objective evidence debunks the assertion.  Although Plaintiff received services in the ESE program, he did so on the basis of a learning disability, not subaverage intellectual functioning.  A specific learning disability does not result from subaverage intellectual functioning.[9]  In addition, intelligence testing conducted in 1996 revealed that

---

[9]"A specific learning disability does not include learning problems that are primarily the result of a[n] . . . intellectual, or emotional/behavioral disability, . . . or environmental, cultural, or economic factors."  http://www.fldoe.org/ese/sld.asp (last visited Feb. 21, 2013).

Plaintiff's cognitive ability was in the average range.  (R. 189).  And, in general, it is presumed that a person's IQ remains fairly constant throughout his life.  *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001).  Likewise, to the extent Plaintiff contends that the invalid IQ score demonstrates that his condition met the requirements of a listed impairment, he is incorrect.[10]

Finally, in light of the record support for the ALJ's rejection of the GAF and IQ scores reported by Dr. Appenfeldt, the opinions of the nonexamining psychologist and psychiatrist, namely, that Plaintiff's mental impairments are non-severe, are not inconsistent with the record as a whole.  Thus, the ALJ did not err by according great weight to their opinions.  *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) (providing that an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources).

Next, Plaintiff argues that the record before the ALJ met the mild showing required to demonstrate the presence of a severe impairment at step two of the sequential analysis.  As evidence of the severity of his mental impairment(s), Plaintiff points to: (1) his prior award of

---

[10]Listing 12.05, the listing category for mental retardation, begins with an introductory paragraph, which states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.05.  The listing further provides that the "required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied."  Subsection B, relied upon by the Plaintiff in this case, requires a claimant to demonstrate "[a] valid verbal, performance, or full scale IQ of 59 or less."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.05B.  Had the IQ score of 41 been valid, Plaintiff would have met the intellectual functioning requirement of the listing, but the listing would not be met in the absence of showing deficits in adaptive behavior of which there are none.

SSI benefits as a child through age eighteen (1998-2008); (2) the IEP annual review completed on April 28, 2006, noting placement in ESE classes, a change from a regular to a special diploma, and expressive difficulties in academic and group settings;[11] (3) the 2009 findings reported by Dr. Appenfeldt, namely, difficulty interviewing Plaintiff, an IQ of 41, and a GAF score of 50; and (4) the 1996 findings reported by Dr. Mayes, revealing below average reading and math scores on statewide testing.  (Doc. 12 at 1-5, 8-10, 11).

The Commissioner counters that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments, individually or in combination, were non-severe.  In particular, the Commissioner points to the objective evidence and Plaintiff's daily activities, and that no treating or consulting source opined that Plaintiff was disabled or had functional limitations that would interfere with his ability to work.  The Commissioner also refutes the arguments and evidence relied upon by Plaintiff, and urges that Plaintiff failed to meet his burden at this step of the sequential evaluation.  (Doc. 16 at 6-14).

At step two of the five-step evaluation process prescribed by the regulations, the ALJ must "consider the medical severity of [the claimant's] impairments."  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (quotation omitted).  The severity of an impairment is measured in terms of its effect on the claimant's ability to work.  *Moore*, 405 F.3d at 1213 n.6 (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  A mere diagnosis is

---

[11]Plaintiff cites additional evidence from the IEP:  a grade point average of 1.0 reflecting failure in most subjects; reading and math scores in the sixth-grade range; and attendance and discipline records reflecting a lack of employability skills.  He also summarily cites his mother's affidavit submitted to the Appeals Council, identifying Dr. Appenfeldt as the same doctor that examined Plaintiff when he was awarded benefits.

insufficient to establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work. *Id.*

An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental abilities to perform basic work activities[12] and has lasted for a continuous period of twelve months.[13] *See* 20 C.F.R. §§ 416.920, 416.921. An impairment or combination of impairments is "not severe" only if it is a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's physical or mental abilities to work, irrespective of age, education, or work experience.[14] *Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant bears the burden of proving he has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bridges*, 815 F.2d at 625-26. If the claimant does not have a severe impairment or combination of impairments, then he is not disabled. *Id.* at 1030 (citing 20 C.F.R. § 416.920).

---

[12]Basic work activities (mental) include understanding, remembering and carrying out simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting of judgment. 20 C.F.R. § 416.921(b).

[13]The durational requirement is set forth in 42 U.S.C. § 423(d)(1)(A).

[14]"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." Social Security Ruling 85-28, 1985 WL 56856, at *4 (1985).

The regulations set forth a special technique for evaluating the severity of a claimant's mental impairments. 20 C.F.R. § 416.920a. In determining whether a claimant's mental impairments are "severe," the ALJ must rate the degree of the claimant's functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3). A five-point scale (none, mild, moderate, marked, and extreme) is used in rating the first three functional areas, and a four-point scale (none, one, two, three, and four or more) in rating episodes of decompensation. 20 C.F.R. § 416.920a(c)(4). A mental impairment generally is considered non-severe for purposes of step two if the degree of limitation in three functional areas - activities of daily living, social functioning, and concentration, persistence or pace - is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. § 416.920a(d)(1).

Here, the ALJ correctly applied the regulatory framework for determining whether a mental impairment is severe and fairly addressed the objective evidence of record as well as the credibility of the testimony of Plaintiff and his mother.[15] Relying on the opinions of Dr. Appenfeldt, Dr. Mayes, and the nonexamining state agency consultants, the ALJ found that Plaintiff had no limitations in activities of daily functioning; no more than mild limitations in social functioning; no more than mild limitation in concentration, persistence or pace; and no episodes of decompensation. Based on these findings, the ALJ concluded that Plaintiff had medically determinable impairments, namely, "questionable learning disorder and

---

[15]Although Plaintiff points to this testimony as well as to his mother's affidavit, he does not challenge the ALJ's credibility determination.

14

oppositional traits," but that the impairments were non-severe individually or in combination. (R. 25-29).

Substantial evidence supports the ALJ's finding of non-severe mental impairments, i.e., that the SLD and oppositional traits did not significantly limited Plaintiff's ability to perform basic work activities. As indicated above, the IQ and GAF scores assessed by Dr. Appenfeldt do not demonstrate otherwise. The IQ score was considered invalid and there is no indication that Dr. Appenfeldt assigned the GAF score due to Plaintiff's inability to work. While Plaintiff is correct that the psychologist noted Plaintiff was difficult to interview in that he frequently nodded his head rather than respond verbally (R. 192), Plaintiff is incorrect that the same translates into limitations that have more than a mild impact on his functioning. Given the ALJ's assessment of Dr. Appenfeldt's opinions, I am unable to find that her report is inconsistent with the findings of the nonexamining psychologist and psychiatrist, both of whom reviewed her report. While recognizing the low threshold applicable at step two, I am nonetheless constrained to conclude that these three evaluations provided substantial evidence upon which the ALJ was entitled to find that Plaintiff's SLD and oppositional traits were non-severe impairments. Significantly, Plaintiff does not demonstrate otherwise.

Regarding the contents of Plaintiff's 2006 IEP, I am unable to find that it mandates a different conclusion. While the IEP has historical significance, it predated Plaintiff's application by roughly three years. In any event, and contrary to Plaintiff's urging, the educational findings in the IEP do not establish that Plaintiff's SLD was a severe impairment as such is defined under the Act and implementing regulations. Rather than allege specific work-related functional limitations or evidence demonstrating the same, Plaintiff only

recounts that he was in SLD classes in the tenth grade, was to receive a special not standard diploma, and did not graduate.  None of those factors demonstrate an inability to perform basic work activities.  Plaintiff's summary urging that, "[h]is emotional conditions therefore would have had an effect upon the type of degree he was going to have and certainly would therefore have an effect on the ability to work," is vague, unsupported and simply does not establish limitations in his ability to perform mental basic work activities.  Likewise, Plaintiff's difficulty expressing himself in academic and group situations in tenth grade does not specifically correlate to any work-related mental limitations during the pertinent period here.  Nor does a poor grade-point average or sixth grade reading and math levels.  As for the statement in the IEP that Plaintiff lacked employability skills, such was made in the context of then current attendance and discipline records and is not tied to any alleged disability.  While Plaintiff is correct the ability to be punctual and maintain attendance are relevant work-related skills, the statement to which he cites does not establish that he is unable to do so in light of his SLD.  To the extent Plaintiff points to findings in Dr. Mayes' report, her findings in no way establish work-related functional limitations as an adult.

Further, the testimony of Plaintiff and his mother undercut the assertion of severe impairments.  Plaintiff testified that his disability was related to trouble comprehending things.  Nonetheless, Plaintiff testified that he watched television, listened to music, drew pictures, did yard work and laundry, shopped once a month, visited others off and on, and held a couple of jobs for a month or two.  And, as the ALJ noted, information on Plaintiff's disability report indicated he stopped working not for reasons related to his inability to comprehend things but because he overslept and did not get up for work.  (R. 115).  While

16

Plaintiff's mother testified that Plaintiff was disabled due to a short attention span, she reported that he worked for three months as a dishwasher, did chores at home, raked others' yards for money, and will do most anything asked to do.  This testimony provided additional support for the ALJ's finding of no severe impairments.

Finally, regarding the prior entitlement to benefits, I am unable to find that the ALJ's failure to address it was error or that it undermined the substantial evidence on which she relied in finding that Plaintiff's mental impairments were non-severe.  To the extent Plaintiff suggests that the knowledge of the prior award of benefits in of itself was sufficient to meet the mild showing of a severe impairment, I disagree.  That Plaintiff received benefits as a child, ostensibly due to a SLD or ADD because there are no allegations of other mental impairments and Plaintiff freely admits he is not limited physically, does not automatically translate into any specific work-related limitations under the adult disability standard utilized on the instant claim.

In sum, the ALJ's severity finding is supported by the objective and subjective evidence of record.

By his second claim, Plaintiff argues that the ALJ failed to properly develop the record of an unrepresented claimant by not obtaining evidence that would support an award of benefits.  In particular, Plaintiff faults the ALJ for not mentioning in her decision that Plaintiff received SSI benefits as a child and the same did not terminate until he was eighteen years old.  He also faults the ALJ for not obtaining other medical records and evaluations that occurred while he was a student and receiving benefits.  (Doc. 12 at 4-6).

17

The Commissioner counters that the ALJ developed an adequate record at the hearing and Plaintiff fails to show what additional testimony could have been elicited at the hearing that would have altered the decision.  According to the Commissioner, the record contained sufficient evidence of Plaintiff's subjective complaints, the ALJ properly considered the same, the ALJ elicited testimony about current treatment (none), and the ALJ obtained and reviewed a consultative evaluation by Dr. Appenfeldt.  Nothing more was required for a reasoned decision.  The Commissioner also urges that Plaintiff fails to show he was prejudiced by a lack of representation or by the failure to obtain records predating his claim by years.  (Doc. 16 at 14-17).

The ALJ has a basic duty to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  This obligation exists whether or not the claimant is represented by counsel.[16]  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Nonetheless, it is the claimant's burden of proving that he is disabled and he is responsible for producing evidence in support of his claim.  *See Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)).  Furthermore, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered.  *See Graham*, 129 F.3d at 1423.  In

---

[16]Contrary to Plaintiff's suggestion (Doc. 12 at 5), the ALJ's duty to develop the record in this case did not rise to a "special duty."  Such a duty arises where a claimant is unrepresented at the hearing and has not waived the right to representation.  *See Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) ("When the right to representation has not been waived, however, the [ALJ]'s obligation to develop a full and fair record rises to a special duty.").  Here, Plaintiff waived his right to representation (R. 36-37), and he does not allege that his waiver was invalid.

considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice.  *Id.*

While the record in this case is scant, Plaintiff fails to demonstrate that the record was not fairly developed and sufficient with respect to both testimony and documentary evidence to allow for a reasoned decision.  And, significantly, a remand on this basis is not warranted because Plaintiff wholly fails to demonstrate prejudice.

To the extent Plaintiff suggests that the ALJ failed to adequately develop his testimony at the hearing, the administrative transcript reveals otherwise.  The ALJ recited the limited record evidence and inquired whether anything was missing and whether Plaintiff currently was receiving treatment for any condition.  (R. 38).  The ALJ also inquired briefly about Plaintiff's education background, the basis for his disability, prior work, and daily activities.  (R. 40-43).  While Plaintiff's responses were limited, i.e., one to three or four word responses, he answered the questions.  *See id.*  Further, the ALJ noted on the record that she did not think Plaintiff wanted to be at the hearing or cooperate.  (R. 40).  The ALJ also took testimony from Plaintiff's mother and she expounded on Plaintiff's testimony.  (R. 43-47).  While complaining about its inadequacy, Plaintiff fails to demonstrate the conduct of the hearing resulted in real prejudice.  *See Kelley v. Heckler*, 761 F.2d 1538, 1540-41 (11th Cir. 1985) (holding that even when the hearing was "less than totally satisfactory," remand is unwarranted unless the claimant shows prejudice).

As for Plaintiff's claim that the record was insufficient because the ALJ did not obtain additional records, such is not established either.  Under the regulations, the ALJ (and the SSA) were only obligated to develop a medical/psychological record for the twelve

months preceding the filing of Plaintiff's application for SSI payments, or from April 28,

2009, to April 28, 2010.  *See* 20 C.F.R. 416.912(d) (stating that it is the SSA's responsibility

to develop a claimant's complete medical history for at least the twelve months preceding the

month in which the application was filed unless there is a reason to believe that development

of an earlier period is needed).  The SSA did so by sending Plaintiff for a consultative with

Dr. Appenfeldt in July 2009.  While Plaintiff's prior claim file may have shed light on the

basis for Plaintiff's disability as a child, Plaintiff makes no showing that his entitlement to

benefits as a child would mandate a finding of a severe impairment or disability as an adult.

Importantly, Plaintiff does not identify a specific impairment or resulting limitations or any

specific evidence from such records which should have been included in the ALJ's

consideration or which caused him prejudice in its absence.  He also fails to discuss the

difference in disability standards in adult and child cases.  Lastly, it is not insignificant that

Plaintiff did not request his prior claim file be reviewed by the Appeals Council or submit it

to this Court in support of his claim.[17]

       As for the school records, the ALJ had Plaintiff's IEP for the 2006/2007 school year

or eleventh grade and there is no allegation of pertinent school records dated thereafter.  As

for school records prior to that time, the record before the ALJ included the Psychological and

Learning Analysis Report completed by a school psychologist in the summer of 1996 when

Plaintiff was in the first grade.  (R. 187-90).  While it is reasonable to assume there are

---

[17]While Plaintiff also faults the ALJ for failing to mention his prior entitlement to
child's benefits, the ALJ was aware of the same because Plaintiff's mother testified to this at
the hearing.  (R. 44-45).  The administrative record before the ALJ also included a disability
report indicating a prior award of child's benefits from 1998 to 2008.  (R. 110-11).

additional school records from 1996 to 2006, their relevance to Plaintiff's instant claim is dubious.  And, as with the prior file, Plaintiff did not obtain any such records to submit to this Court in support of his claim.  In any event, Plaintiff makes absolutely no showing of prejudice resulting from failure to obtain records which predate his application by three to thirteen years.  Plaintiff's vague suggestions that such would have altered the ALJ's decision are not supported or persuasive.

By his third claim, Plaintiff argues that the ALJ utilized an incorrect standard by stating that Plaintiff's activities, as described in the testimony of the Plaintiff and his mother, do not support a finding of "total disability."[18]  Plaintiff argues that "total disability" is not the standard with regard to an adult disability case.  Rather, to support a denial of benefits, the ALJ must find that the claimant can perform substantial gainful activity on a sustained basis.  Because the ALJ applied an incorrect standard and did not even mention the correct standard, Plaintiff urges that his case be reversed and remanded.  (Doc. 12 at 7).

The Commissioner counters that the ALJ utilized the correct standard in Plaintiff's case, which is evidenced in the decision.  He concedes that "total disability" is not the standard for evaluating Plaintiff's case, the ALJ's use of that term does not negate the fact that she applied the proper standard in evaluating Plaintiff's case.  Thus, the Commissioner contends that Plaintiff was not prejudiced by the same and a remand on this basis would not alter the decision.  (Doc. 16 at 15-16).

---

[18]Plaintiff references page 27 of the ALJ's decision.  (Doc. 12 at 7).

This claim requires little discussion.  While the ALJ stated that testimony about Plaintiff's activities did not support a finding of "total disability" (R. 27), a review of the decision in its entirety reveals that the ALJ clearly was aware of the applicable standard and correctly applied the same.  (R. 23-29).

Finally, by his fifth claim, Plaintiff suggests that the ALJ erred by not crediting or relying on the VE's testimony that no jobs would be available for an individual that "could not concentrate or attend a basic job task" (R. 50).  According to Plaintiff, other record evidence demonstrates support for that limitation and a finding of disabled is therefore required given the VE's testimony.  (R. 12 at 10-11).

The Commissioner counters that such extreme mental limitations were not credited by the ALJ and thus she was not required to accept or rely on the VE's response to a hypothetical question with such limitations.  (R. 16 at 21-22).

While it is undisputed that the ALJ is duty bound to include all applicable limitations in the hypothetical to the VE, *see Pendley*, 767 F.2d at 1562-63, the law does not require the inclusion of limitations not found to exist.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  Furthermore, the ALJ properly ended the sequential evaluation in this case at step two upon finding that Plaintiff's mental impairments were non-severe. There was no error in the hypothetical questions propounded to this VE requiring remand.

## D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to

close the case.

Respectfully submitted this
26th day of February 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES
## OF EXPEDITED RESPONSE PERIOD

Failure to file written objections to the proposed findings and recommendations

contained in this report within ten (10) days from the date of its service shall bar an aggrieved

party from attacking the factual findings on appeal and a *de novo* determination by a district

judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P.

6.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record